**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **SANTIAGO DIAZ, # M-22601,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 18-cv-1426-SMY** |
| | ) | |
| **JOHN BALDWIN,** | ) | |
| **STEVE DUNCAN,** | ) | |
| **KEVIN KINK,** | ) | |
| **UNKNOWN PARTY #1 (Maintenance** | ) | |
| **Dept.),** | ) | |
| **MR. WALKER,** | ) | |
| **LT. CARRIE,** | ) | |
| **P.A. BLANCHARD,** | ) | |
| **UNKNOWN PARTY #2 (Wexford** | ) | |
| **Employee),** | ) | |
| **and JANE DOES #1-3 (Wexford Nurses),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff Santiago Diaz, currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint (Doc. 1), which asserts that he did not receive proper medical care for an injury caused by a hazardous prison workplace condition, is now before the Court for a preliminary merits review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff makes the following relevant allegations in the Complaint: Plaintiff is a Hispanic inmate who does not speak English and who has a very limited understanding of the language. (Doc. 1, pp. 1-2). Throughout Plaintiff's interactions with prison medical staff, he was never provided with a translator to help him communicate.

In April 2016, Plaintiff was working in the dietary department at Lawrence. His job included loading supplies into the large walk-in coolers. (Doc. 1, pp. 5, 7). The heavy sliding door to the "E" cooler had been malfunctioning since mid-2015, making it extremely hard to open and close. Plaintiff was generally aware that the door "stuck a little," but knew nothing more due to the language barrier. (Doc. 1, p. 7). When Plaintiff attempted to pull the door closed, it stuck and then suddenly gave way, causing Plaintiff to lose his balance. (Doc. 1, pp. 7-8). The door slammed shut on Plaintiff's right hand, fracturing two of his metacarpal bones. He felt a "pop" in his hand and an obvious lump instantly appeared. (Doc. 1, p. 8).

Other inmates had notified supervisors about the broken door before Plaintiff's incident. (Doc. 1, p. 6). A work order had been submitted to Defendant Unknown Party #1 (a maintenance employee), but this individual failed to make the repair in a timely manner. (Doc. 1, p. 7). Food Supervisor Walker was also at fault for allowing the dangerous door condition to remain.

Another inmate worker (Leach) saw the incident, helped Plaintiff get ice, and told Walker what happened. (Doc. 1, pp. 8, 22-23). Walker had Lt. Carrie take Plaintiff to the medical department. (Doc. 1, p. 9). Neither Walker nor Carrie filed an incident or accident report.

Plaintiff was seen by Nurse Jane Doe #1, who observed the deformity on Plaintiff's injured hand. This Nurse had Plaintiff move his fingers and hand, and diagnosed his injury as "only a bruise," despite the obvious lump. (Doc. 1, pp. 9-10). She gave Plaintiff Ibuprofen and dismissed him without making a doctor or x-ray referral or excusing him from work. (Doc. 1, pp. 10-11). Plaintiff continued to work in dietary, despite the pain and risk of re-injury to his hand.

About a month later, Plaintiff saw Nurse Jane Doe #2, who concluded that nothing was wrong with his hand, even though it still had an "obvious physical deformity." (Doc. 1, p. 11). On July 23, 2016, Plaintiff also saw Nurse Jane Doe #3, who referred Plaintiff to the physician assistant. (Doc. 1, p. 12). P.A. Blanchard saw Plaintiff on July 26, 2016, and ordered an x-ray. (Doc. 1, p. 13). Unknown Party #2 (a Wexford-employed radiologist at Lawrence), reviewed the x-ray on July 28, 2016 and saw the fracture.

On July 29, 2016, an outside radiologist reviewed Plaintiff's x-ray and reported fractures to his 4th and 5th metacarpals. One of the breaks may have been re-fractured while healing. (Doc. 1, pp. 13-14). On August 10, 2016, Plaintiff was evaluated for surgery by an outside doctor, who stated that the hand would have to fully heal and then be re-broken and properly set. (Doc. 1, p. 14).

On August 12, 2016, Blanchard issued Plaintiff Ibuprofen, but reported that "no further treatment [was] warranted" based on the orthopedic specialist's report. *Id.* Plaintiff has been given more Ibuprofen several times since then for his ongoing pain, but has had no further specialist treatment.

Former Warden Duncan and IDOC Director Baldwin denied Plaintiff's grievance over these events. (Doc. 1, pp. 14-15).

Plaintiff asserts Eighth and Fourteenth Amendment claims, and a negligence claim under Illinois law. (Doc. 1, pp. 15-19). He seeks an order to be provided with surgery for his hand injury, as well as declaratory relief and damages. (Doc. 1, p. 19).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these Counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order will be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1]

> **Count 1:** Eighth Amendment deliberate indifference claim against Unknown Party #1 and Walker for subjecting Plaintiff to the dangerous working condition of the malfunctioning cooler door in the dietary department;

> **Count 2:** Eighth Amendment deliberate indifference claim against Jane Doe Nurses #1-3, Blanchard, and Unknown Party #2, for delaying and denying adequate medical care for Plaintiff's broken hand and failing to provide him with surgery;

> **Count 3:** Fourteenth Amendment due process claim against Walker, Carrie, Jane Doe Nurses #1-3, and Blanchard, for failing to provide Plaintiff with a Spanish-English translator for his conversations with Defendants about his medical needs, failing to document his accident with incident reports, and charging him a $5.00 co-payment for his continuation of medical care;

> **Count 4:** State law claim for negligence against Unknown Party #1 and Walker, for failing to repair the dangerous cooler door in the dietary department;

> **Count 5:** State law claim for negligence against Blanchard, Jane Doe Nurses #1-3, and Unknown Party #2, for failing to properly examine and treat the fractures in Plaintiff's hand.

As discussed below, Count 2 may proceed for further review against some of the defendants.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Counts 1, 3, 4, and 5 will be dismissed pursuant to § 1915A.

## Count 1 – Deliberate Indifference to Dangerous Condition

Plaintiff's assertion that Supervisor Walker and Unknown Maintenance Employee #1 should be held liable for his injury because they allegedly knew about the defective cooler door but did not repair it, fails as a constitutional claim. To sustain an Eighth Amendment claim, an inmate must have been subjected to conditions of confinement that deny him "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, the condition must amount to an objectively serious deprivation of a basic human need, such as food, medical care, sanitation, or physical safety, creating an excessive risk to the inmate. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In this case the malfunctioning cooler door does not rise to the level of an objectively serious deprivation. *See Guitron v. Paul*, 675 F.3d 1044, 1045 (7th Cir. 2012) ("conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety"); *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) ("failing to provide a maximally safe environment, one completely free from . . . safety hazards, is not [a constitutional violation]"); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"); *Morissette v. Peters*, 45 F.3d 1119, 1123-24 (7th Cir. 1995) (shocks from exposed wiring were an avoidable, "unpleasant inconvenience" rather than a demonstration of deliberate indifference to a known substantial risk).

An Eighth Amendment claim also has a subjective component, which requires a showing that a defendant acted or failed to act in spite of his or her knowledge that the plaintiff faced a substantial risk of serious harm from the condition. *Farmer*, 511 U.S. at 842. Mere negligence does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

*See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Plaintiff's allegations suggest that Walker and Unknown Party #1 were (or should have been) aware of the defective door and failed in their general duty of care to persons who would be using the door. These allegations may support a state-law negligence claim. However, the cooler door was not a sufficiently serious condition to implicate constitutional concerns, and the actions of Walker and the Unknown Party #1 do not suggest that they wanted Plaintiff to suffer harm. *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). For these reasons, the deliberate indifference claim in **Count 1** will be dismissed without prejudice.

### Count 2 – Deliberate Indifference to Serious Medical Need

Plaintiff's hand injury presented a serious and painful medical condition that was significantly affecting his daily activities when he initially sought treatment. His eventual examination by a specialist indicates that the improperly healed fractures continue to be a serious condition that has not been treated. Thus, the Complaint allegations satisfy the objective component of an Eighth Amendment claim. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

As to the subjective element, the cursory examination by Jane Doe Nurses #1 and #2 and their failure to order an x-ray, doctor referral, or any follow up care in spite of the obvious deformity on Plaintiff's hand, could constitute deliberate indifference to his condition. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) ("Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.") (internal citations and quotations omitted). The resulting delay in obtaining a more thorough examination and diagnosis may also support a deliberate indifference claim. *See Gomez*, 680 F.3d at 865 ("Delaying treatment may constitute

deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). Additionally, the failure of Jane Doe Nurses #1 and #2 to seek help from a translator so that they could fully communicate with Plaintiff regarding his injury may also be relevant to the deliberate indifference claim. Therefore, Plaintiff has stated a cognizable claim in Count 2 against Jane Doe Nurses #1 and #2. These claims may proceed once these individuals are identified by name.

By contrast, Nurse Jane Doe #3, upon seeing Plaintiff for the first time, promptly referred him to another medical professional. This action represents the opposite of deliberate indifference, and eventually led to the fracture diagnosis. Her failure to get a translator or to accurately note the cause of Plaintiff's injury did not violate the Constitution, and her failure to excuse Plaintiff from work did not clearly amount to deliberate indifference, in the absence of any indication that she knew Plaintiff's health would be at risk by continuing to work at his dietary job. Accordingly, Jane Doe #3 will be dismissed from the action without prejudice.

Plaintiff's claim against Blanchard asserted in Count 2 may proceed. During Plaintiff's initial visit to Blanchard on July 26, 2016, Blanchard ordered an x-ray based of the bone deformity he observed. While that conduct does not support a deliberate indifference claim, Blanchard's failure to excuse Plaintiff from work following this examination may be considered under Count 2. Of greater concern is Blanchard's later decision that Plaintiff did not need further treatment, even though the specialist concluded in August 2016 that Plaintiff's bones would have to be re-broken and properly set. Plaintiff may proceed against Blanchard with this aspect of his claim, as it suggests Blanchard may be responsible for the failure to follow the specialist's recommendation to correct Plaintiff's condition. *See Perez v. Fenoglio*, 792 F.3d 768, 777-79 (7th Cir. 2015) (prison doctor's refusal to follow treatment recommendations of

outside medical specialist may constitute deliberate indifference).

Plaintiff also includes the Unknown Party #2 radiologist, but fails to set forth any facts suggesting that this person was deliberately indifferent to his condition. The Unknown Party #2 reviewed Plaintiff's x-ray and informed Blanchard that Plaintiff had a fracture, although he did not believe the fracture was as old as Plaintiff indicated. (Doc. 1, p. 13). That possible mistake does not amount to deliberate indifference. The Unknown Party #2 will therefore be dismissed without prejudice.

To summarize, Count 2 will proceed only against Jane Doe Nurses #1 and #2, and Blanchard.

### Count 3 – Fourteenth Amendment Claims

As noted above, the medical Defendants' failure to seek an interpreter's assistance may be relevant to the remaining Eighth Amendment deliberate indifference claims in Count 2. *See, e.g.*, *Morales v. Fischer*, 46 F. Supp. 3d 239, 253-54 (W.D.N.Y. 2014) ("Complete failure to provide an interpreter in a systemic way may violate the Eighth Amendment provision against cruel and unusual punishment[,]" if communication between an inmate and medical provider is "essential to the efficacy of the treatment") (quoting *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1049 (S.D.N.Y. 1995) (failure to provide sign language interpreter for medical treatments of deaf inmates constituted cruel and unusual punishment). However, the lack of an interpreter fails as a Fourteenth Amendment due process claim in the circumstances presented. Some courts have held that a non-English-speaking inmate may have the right to interpreter services when faced with disciplinary charges. *See, e.g., Jose-Nicolas v. Berry*, No. 15-cv-964-NJR-DGW, 2018 WL 1466769, at *6-7 (S.D. Ill. Mar. 2, 2018) (collecting cases). Here, however, no disciplinary action was involved. Therefore, the portion of Count 3 which attempts to assert a due process

violation for the failure to obtain an interpreter fails to state a claim upon which relief may be granted.

Plaintiff also complains of several instances when various defendants failed to file accident or incident reports about the events he describes. (Doc. 1, pp. 9-10). Such omissions may have violated prison administrative rules, but do not rise to the level of a constitutional violation as a federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Finally, Plaintiff objects to the assessment of a $5.00 co-payment for some of his sick call visits, which he claims should have been exempt from the fee because he was seeking continuation of care for a previous injury. (Doc. 1, pp. 11-12, 17). Again, even if the fee assessment was improper, it does not present a viable constitutional claim. An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").

The Fourteenth Amendment claims in **Count 3** fail to state a claim upon which relief may be granted, and will be dismissed.

### Count 4 – Negligence/Cooler Door

Plaintiff's state law negligence claim (Doc. 1, pp. 18-19) breaks down into 2 parts – potential negligence for failing to repair the cooler door, and possible medical negligence by the various medical defendants (which is considered in Count 5). As discussed under Count 1,

Plaintiff cannot maintain a constitutional claim against Walker or Unknown Party #1 (maintenance worker) for failing to fix the cooler door which caused Plaintiff's injury. However, the facts may support a negligence claim under Illinois law. Because Count 1 and Defendants Unknown Party #1 and Walker will be dismissed from this action, the Court will not exercise jurisdiction over this potential state law claim. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (when a federal claim is dismissed, "the usual practice is to dismiss without prejudice state supplemental claims").

Accordingly, Count 4 will be dismissed from this action without prejudice. Plaintiff may bring his negligence claim against Walker and Unknown Party #1 in the appropriate state court, if he is able to do so within the applicable time limits. The Court makes no comment on the merits of such a claim.

### Count 5 – Medical Negligence

Plaintiff claims that Blanchard, Jane Doe Nurses #1-3, and Unknown Party #2 failed to provide prompt and appropriate diagnostic tests and treatment for his fractured hand. Plaintiff's allegations may support a medical negligence claim under Illinois law. Because Plaintiff will be allowed to proceed with his deliberate indifference claims in Count 2 against some of these defendants, the Court has supplemental jurisdiction over the related state law negligence claims. *See Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

However, Plaintiff cannot proceed with his state law medical negligence claims until he complies with state law requirements. Specifically, under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and

reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013).[2] A separate affidavit and report shall be filed as to each Defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the medical negligence claim in **Count 5** will be dismissed. However, the dismissal

---

[2] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

will be without prejudice at this time, and Plaintiff will be allowed 60 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of Count 5 may become a dismissal **with prejudice.** *See* FED. R. CIV. P. 41(b).

### Defendants Baldwin, Duncan, and Kink

Plaintiff has sued Baldwin, Director of the Illinois Department of Corrections ("IDOC"), for declaratory relief and for the purpose of recovering money damages against IDOC, because Baldwin is responsible for overall management of the IDOC. (Doc. 1, p. 3). However, IDOC cannot be sued in a civil rights case for money damages, either directly or through naming the IDOC Director in his official capacity because the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment).

Further, there is no supervisory liability in a § 1983 action. Instead, to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). In other words, the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Id.* Nothing in the Complaint indicates that Baldwin was personally involved in any of the alleged deprivations.

Baldwin's role in approving the denial of Plaintiff's grievance(s) (Doc. 1, p. 15) is not

grounds for imposing liability on him for the actions of others as described in the grievance(s). *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim"). For these reasons, Baldwin will be dismissed from the case.

Likewise, Plaintiff does not set forth any factual allegations to support a claim against former warden Duncan in his individual capacity. He claims only that Duncan concurred with the denial of his grievance, and was the warden at the time the alleged violations occurred. (Doc. 1, pp. 4, 14). Therefore, Duncan will be dismissed from the case as well.

Plaintiff properly includes current Lawrence Warden Kink as a defendant for the purpose of obtaining what Plaintiff labels as "declaratory relief," but which is more accurately described as injunctive relief. Plaintiff specifically requests that the Court order Defendants to provide surgery for his injured hand. (Doc. 1, p. 19). *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). Defendant Kink will therefore remain as a party to the action in his official capacity only, to respond to discovery requests and for the purpose of carrying out any injunctive relief to which Plaintiff may be entitled.

### Identification of Unknown Defendants

Plaintiff will be allowed to proceed with the claims in Count 2 against Defendants Jane Doe Nurses #1 and #2. However, these defendants must be identified with particularity before service of the Complaint can be made on them. When an inmate's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the inmate should have the opportunity to engage in limited discovery to ascertain the identity of those defendants.

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Kink is named as a defendant and will be responsible for responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendants Jane Doe Nurses #1 and #2 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Recruitment of Counsel

There is no constitutional or statutory right to appointment of counsel in a civil case, although the Court may, in its discretion, appoint counsel to represent indigent civil litigants. *Santiago v. Walls*, 599 F.3d 749, 760-761 (7th Cir. 2010); *see also Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992); 28 U.S.C. § 1915(d). 28 U.S.C. § 1915(e)(1) anticipates that the Court may request an attorney to represent a person who is unable to afford counsel, in order to ensure the orderly prosecution of litigation in the district. *Pruitt v. Mote*, 503 F.3d 647, 653-54 (7th Cir. 2007) (a court has discretion to recruit counsel, and lawyers have "obligations to their calling") (citing *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310 (1989)). In recognition of the burden such an assignment imposes upon the practicing bar, the Local Rules provide that such a request will not be made more than once during a twelve-month period and/or within 2 years of an attorney's last panel appointment. SDIL-LR 83.1(i); 83.8(b).

In considering whether to recruit counsel, the Court must inquire whether, "given the difficulty of the case, [does] the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel [make] a difference in the outcome?" *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993); *Greeno v. Daley*, 414 F.3d 645, 658(7th Cir. 2005); *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007). The Court of Appeals for the Seventh Circuit clarified in *Santiago v.*

*Walls* that the relevant inquiry is whether, in light of the totality of the circumstances, the difficulty of the case exceeds the particular plaintiff's capacity as a layperson to coherently litigate the case pretrial and at trial. *Santiago*, 599 F.3d at 762-764.

Here, Plaintiff's application to proceed *in forma pauperis* was denied because he had sufficient funds to pay the $400.00 filing fee for this action. (Doc. 5). That said, Plaintiff's financial information indicates that he is unable to afford to retain counsel. (Doc. 2). While Plaintiff does not indicate that he has attempted to secure counsel on his own, he represents that he has very limited English proficiency and has depended on fellow inmates to prepare his pleadings. The language barrier, the medical issues in this case, the interests of judicial economy, and the swift resolution of this action all weigh in favor of appointing counsel to represent Plaintiff. In particular, it is apparent that without the assistance of counsel, Plaintiff will likely be unable to comply with the affidavit and certificate of merit requirements of 735 ILL. COMP. STAT. §5/2-622(a). Therefore, Plaintiff's Motion for Attorney Representation (Doc. 3) is **GRANTED**, and a member of the district court bar has been randomly selected from the 2018 Pro Bono Panel through the CM-ECF system for assignment to represent Plaintiff Diaz in this action.

**IT IS HEREBY ORDERED** that, for the reasons stated, and in accordance with 28 U.S.C. § 1915(e)(1) and Local Rule(s) 83.1(i) and 83.9(b), attorney William S. Clark, IV, of Foley & Mansfield, 101 S. Hanley Rd., Suite 600, St. Louis, MO 63105, is **ASSIGNED** to represent Plaintiff in this civil rights case. On or before December 4, 2018, assigned counsel shall enter his appearance in this case. Attorney Clark is free to share responsibilities with an associate who is also admitted to practice in this district court. Assigned counsel, however, must enter the case and shall make first contact with Plaintiff, explaining that an associate may also be

working on the case.  Plaintiff should wait for his attorney to contact him in order to allow counsel an opportunity to review the court file.

The Clerk of Court is **DIRECTED** to transmit this Order and copies of the docket sheet and the Complaint (Doc. 1) to attorney Clark.  The electronic case file is available through the CM-ECF system.

Now that counsel has been assigned, Plaintiff <u>shall not</u> personally file anything in this case, except a pleading that asks that he be allowed to have counsel withdraw from representation.  If counsel is allowed to withdraw at the request of Plaintiff, there is no guarantee the Court will appoint other counsel to represent Plaintiff.

As to the reinstatement of Plaintiff's dismissed medical negligence claim in **Count 5** of this action, if counsel determines that a motion to reinstate the claim will be consistent with his obligations under Federal Rule of Civil Procedure 11, counsel **SHALL SUBMIT** such a motion along with Plaintiff's required affidavit(s) regarding consultation with a qualified health professional, no later than **60 days** from the date of this Order.  The professional's certificate(s) of merit must also be timely filed within the requirements of 735 ILL. COMP. STAT. §5/2-622(a). Should Plaintiff fail to timely file the required affidavit or certificate, the dismissal of **Count 5** may become a dismissal **with prejudice**.  *See* FED. R. CIV. P. 41(b).

**IT IS FURTHER ORDERED** that, within **60 days** of the date of this Order, Plaintiff, by and through counsel, shall file an amended complaint, if counsel deems amendment appropriate. An amended complaint will undergo preliminary review.  If an amended pleading is not filed, the case shall proceed on the present Complaint.

**IT IS FURTHER ORDERED** that all pending motions filed by Plaintiff *pro se* are **DENIED** without prejudice so that assigned counsel can evaluate how to proceed.

Plaintiff is cautioned to consult with his counsel in this matter and to understand that it is assigned counsel who is the legal professional in this relationship. Without commenting on the validity of the matter in litigation, counsel is reminded and Plaintiff is advised that counsel, even though appointed by the Court, has an obligation under the rules to refrain from filing frivolous pleadings. As a consequence, counsel will likely, from time to time, advise Plaintiff against taking a certain course of action. While Plaintiff may not totally agree with counsel's advice, he should realize that, in the long run, such advice will be in his best interest because it is in compliance with the law. Also, counsel may advise Plaintiff to pursue additional claims or to abandon certain existing claims.

Counsel, of course, maintains an ethical obligation to fully and vigorously represent his client, but only to the extent that it does not impede his ethical obligation to follow the rules of the Court and the law. If Plaintiff wants to be represented by counsel, he will have to cooperate fully with counsel.

Counsel is **ADVISED** to consult Local Rules 83.8-83.14 regarding *pro bono* case procedures.

Plaintiff and his counsel are **ADVISED** that, if there is no recovery in the case (or the costs exceed any recovery), the Court has the discretion to reimburse expenses. Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses, as funds are available. The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement. Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will be waived. *See* SDIL-LR 83.13. The funds available for this purpose are limited, however, and counsel should use the

utmost care when incurring out-of-pocket costs. In no event will funds be reimbursed if the expenditure is found to be without a proper basis. The Court has no authority to pay attorney's fees in this case. No portion of a filing fee will be reimbursed. Assigned counsel may move for an exemption from PACER fees for this case.

The district court has entered into an agreement with attorney James P. Chapman and the Illinois Institute for Community Law to consult with lawyers on issues in these cases, including substantive and procedural questions (both legal and practical) and dealing with the client. Mr. Chapman can be reached by phone at (312) 593-6998 or email at JamesPChapman@aol.com. His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* on a case in the district. Counsel is also encouraged to view online lectures presented by Mr. Chapman at www.illinoislegaladvocate.org (under "Legal Resources" then "Prisoners' Rights"). In addition, the Court's website, www.ilsd.uscourts.gov, includes a "Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983 Cases" which is available to counsel as a resource. It is listed under "Rules & Forms" – "For Attorneys" on the website. The Court encourages counsel to consult it and Mr. Chapman as needed.

As of this date, Plaintiff's contact information is:

**SANTIAGO DIAZ, M-22601**
**LAWRENCE CORRECTIONAL CENTER**
**10930 LAWRENCE ROAD**
**SUMNER, IL 62466**

## Disposition

**COUNTS 1, 3, 4, and 5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **BALDWIN, DUNCAN, UNKNOWN PARTY #1, WALKER, CARRIE, UNKNOWN PARTY #2,** and **JANE DOE NURSE #3** are **DISMISSED** from this action

without prejudice.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical negligence claims in **COUNT 5** against Defendants **JANE DOE NURSES #1-3, BLANCHARD,** and **UNKNOWN PARTY #2**, Plaintiff shall file the required affidavit(s) pursuant to 735 ILL. COMP. STAT. §5/2-622, within 60 days of the date of this order (on or before January 22, 2019). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 5** may become a dismissal **with prejudice**.

In order for the remaining claims in **COUNT 2** to proceed, service must be accomplished on Defendants **KINK (in his official capacity only as Lawrence Warden)** and **BLANCHARD.** However, because Plaintiff's application to proceed *in forma pauperis* in this action was denied, the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **KINK** and **BLANCHARD.** *See* FED. R. CIV. P. 4(c)(3). If Plaintiff desires to request the appointment of the United States Marshal to serve process on these Defendants, **IT IS ORDERED** that Plaintiff **SHALL FILE** a Motion for Service of Process at Government Expense, within 14 days of the date of entry of this order (on or before December 4, 2018). The Clerk of Court is **DIRECTED** to send a blank form Motion for Service of Process at Government Expense to Plaintiff and to his appointed counsel. Alternatively, counsel may proceed to effect service of process without delay.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have Defendants **KINK** and **BLANCHARD** served with a

summons and copy of the Complaint pursuant to Federal Rule of Civil Procedure 4.[3]  *See* FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for each Defendant, and shall forward the same to the United States Marshal for service.  If Plaintiff does not file a motion for service of process at government expense within 14 days as ordered, the Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the Complaint and this Memorandum and Order to assigned counsel so that he may have Defendants served.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for effecting service of process.  Any documentation of the address shall be retained only by the Marshal.  Address information shall not be maintained in the court file or disclosed by the Marshal.

Service shall not be made on Defendants **JANE DOE NURSES #1 and #2** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties.  Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

---

[3] Federal Rule of Civil Procedure 4(m) provides that service on each defendant must be accomplished within 90 days.

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings, which shall include a determination on the pending motion for attorney representation (Doc. 3), and a plan for discovery aimed at identifying the unknown defendants with particularity.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 19, 2018**

s/ STACI M. YANDLE
United States District Judge