IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SANTIAGO DIAZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   18-cv-1426-RJD |
| | ) | |
| EVELYN BLANCHARD, CLAUDIA G. DOWTY, JEANIE L. STEPHENS, and ROB JEFFREYS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Santiago Diaz, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Plaintiff, a Spanish speaking inmate, alleges he sustained a fracture to his right hand while working in the dietary department at Lawrence. Plaintiff further alleges he was provided inadequate medical treatment for his fractured hand. Plaintiff was assigned counsel and he proceeds on an Eighth Amendment claim of deliberate indifference against Evelyn Blanchard, Claudia Dowty, and Jeanie Stephens (*see* Docs. 45, 121). IDOC Director Rob Jeffreys is a defendant in this action only in his official capacity for the purpose of carrying out any injunctive relief that is ordered.

This matter is now before the Court on the Motion for Summary Judgment filed by Defendants Evelyn Blanchard, Claudia Dowty, and Jeanie Stephens (Doc. 144). For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**Factual Background**

At all times relevant to this lawsuit, Plaintiff was incarcerated at Lawrence Correctional Center (Doc. 45 at ¶ 5).  Plaintiff is a Spanish speaking inmate (*id.*), testifying at his deposition that he can read and write very little, and can comprehend "hardly any" English (Deposition of Plaintiff Santiago Diaz, Doc. 145-1 at 3).

While at Lawrence, and during the relevant time, Plaintiff worked in the kitchen (dietary) at Lawrence (Doc. 145-1 at 5).  As part of his job duties in dietary, Plaintiff worked on the dock and put recently delivered products in the cooler (*id.*).  On April 22, 2016, while working in dietary, the door to the cooler closed on Plaintiff's hand (Doc. 145-1 at 7).  Plaintiff testified the cooler was "a little damaged," so it did not close on the first try, and when Plaintiff tried "a little harder," his hand got caught in the door (*id.*).  On the date of the incident, a report was completed wherein it was noted that Plaintiff's hand was red and swollen (*see* Doc. 145-2).  The incident report also indicated that Plaintiff was "taken to healthcare" (*see id.*).  Soon after sustaining the injury, Plaintiff was escorted to the healthcare unit wherein a nurse evaluated Plaintiff's hand, including manipulating Plaintiff's fingers and hand (Doc. 145-1 at 8).  The nurse told Plaintiff it was a bruise (*id.* at 8-9).

At his deposition, Plaintiff testified that the nurse he saw in the healthcare unit on April 22, 2016 was Defendant Claudia Dowty (Doc. 145-1 at 8).  Plaintiff asserted that he knew the nurse was Dowty because he had seen her several times before (*id.*).  Plaintiff explained that despite recognizing Dowty, he did not include her in the original complaint because he did not yet know her name (*id.*).  In his amended complaint, Plaintiff alleged Dowty provided him with a pill packet containing 15 Ibuprofen 400 mg (Doc. 45 at ¶ 50).  At his deposition, however, Plaintiff testified that Dowty did not provide him with any pain medication (Doc. 145-1 at 9).  There is no

documentation in the record, beyond Plaintiff's testimony, concerning this healthcare visit.

Approximately one month after incurring his injury, Plaintiff submitted a request slip to healthcare regarding the same (Doc. 145-1 at 10). Plaintiff testified that he received assistance in drafting the request slip in English (*id.*). Plaintiff was seen on nurse sick call by Defendant Jeanie Stephens on May 21, 2016 (*id.* at 11; Doc. 145-3 at 62). Stephens examined Plaintiff's hand, and noted that Plaintiff had smashed his right hand in a door about one month ago while working in dietary (Doc. 145-1 at 11; Doc. 145-3 at 62). Stephens observed no swelling or bruising of the hand, and found Plaintiff had full range of motion (Doc. 145-3 at 62). Stephens issued Plaintiff 18 tablets each of Ibuprofen and Acetaminophen (*id.*). Plaintiff rated his pain as a 2-3 on a scale of 1-10 (*id.*). There is no indication a translator was present at this appointment; however, Plaintiff testified he has an understanding of the numbers one through ten in the English language (Doc. 145-1 at 12). Stephens noted that she advised Plaintiff to return to see the provider if his symptoms worsened or interfered with daily functioning (Doc. 145-3 at 62). Plaintiff disputes that he was advised of the same.

Plaintiff was not seen for his hand injury again until July 23, 2016 (Doc. 145-3 at 71). The nurse who examined Plaintiff on this date is not a defendant. The nurse noted Plaintiff was a porter and smashed his hand between a wall and a gate (*id.*). On this date, Plaintiff rated his pain as a 7-8 out of 10 (*id.*). The nurse observed swelling and deformity of Plaintiff's right hand (*id.*). The nurse referred Plaintiff to a physician, provided him pain medication, and instructed him to apply cold to his hand, and to follow-up if his pain increased or if he experienced numbness or skin color changes (*id.*). There is no indication a translator was present at this appointment.

Plaintiff was seen by Defendant Physician's Assistant Blanchard on July 26, 2016 (Doc. 145-3 at 72). The medical record for this appointment reflects that Plaintiff's right hand was

smashed in a door at work in the "docks" and that he was seen by a nurse the day of the incident (*id.*). Blanchard examined Plaintiff's hand and recorded her observations, noting a possible bony deformity in the area (*id.*). Blanchard prescribed Naproxen for Plaintiff's complaints of pain, and ordered an x-ray of his right hand, with instructions to have Plaintiff follow-up in 2-3 weeks (*id.*). There is no indication a translator was present at this appointment. Plaintiff received his x-ray on July 28, 2016 (*id.* at 74). The x-ray indicated a fracture to the 4th metacarpal and base of the 5th metacarpal (*id.* at 74, 77). The x-ray notes also indicated there was a callus around the fracture "suggesting subacute, healing fracture" and noted that the "possibility of re-fracture through the previously healing fracture cannot be excluded" (*id.* at 77). Upon review of the x-ray, Blanchard recommended a splint/sling, a low bunk permit, a collegial referral for an orthopedic consultation, and a follow-up appointment for Plaintiff in five days (*id.* at 74-75). Blanchard also noted that the fracture did not appear to be as old as Plaintiff claimed it was, but testified that it was possible it could have been refractured sometime between April 2016 and July 2016 (Doc. 146-6 at 25). On July 29, 2016, Blanchard issued Plaintiff a medical lay-in (Doc. 145-3 at 76).

Blanchard submitted a referral for an orthopedic consultation for Plaintiff on August 2, 2016, which was approved the same day (Doc. 145-3 at 86). Plaintiff was seen by an orthopedic specialist on August 10, 2016 at the Carle Foundation Hospital ("Carle") (Doc. 145-7). Plaintiff's records from Carle indicate that his "preferred language" was English (*id.* at 2). The specialist at Carle noted Plaintiff's fractures had healed and he had full range of motion (*id.* at 5). The specialist did not recommend any further treatment, advising that Plaintiff needed to "get his hand moving" (*id.* at 5). The specialist noted that Plaintiff could possibly benefit from occupational therapy, but that it was not available to him as an inmate (*id.*).

Plaintiff was seen by Blanchard on August 12, 2016 for a follow-up appointment (Doc.

145-3 at 87). Blanchard noted the findings and recommendations of the specialist, provided Plaintiff with ibuprofen, and discontinued the medical lay-in (*id.*).

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Eighth Amendment Deliberate Indifference***

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005)

(citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

**Discussion**

As a preliminary matter, the parties spend significant time discussing Plaintiff's ability to communicate in English and whether Plaintiff should have been afforded a translator. The Court finds this issue generally immaterial to the question of whether Defendants were deliberately indifferent to Plaintiff's medical condition. Plaintiff asserts Defendants' failure to provide a translator to Plaintiff prolonged and exacerbated his injury. The Court can consider whether Defendants acted timely and appropriately in rendering medical treatment for Plaintiff's injury without determining whether Plaintiff should have had a translator. Indeed, there is no claim that Defendants were deliberately indifferent in not affording Plaintiff a translator. Insofar as any communication issues may be relevant, they will be detailed below in the context of whether any Defendant acted with deliberate indifference to Plaintiff's hand injury.

Also, the Court notes Defendants have not set forth any argument that Plaintiff's hand injury did not constitute a serious medical need within the meaning of the Eighth Amendment. As such, the Court finds this point conceded for purposes of the motion at hand.

*Nurse Claudia Dowty*

Defendants claim that Plaintiff's identification of Nurse Dowty as the nurse who examined him in the healthcare unit on April 22, 2016 is unreliable. In support of this argument, Defendants question the reliability of Plaintiff's memory and identify various discrepancies in Plaintiff's description of events in his complaints and deposition testimony, specifically citing Plaintiff's failure to consistently identify the lieutenant who escorted Plaintiff to the healthcare unit on the date that he sustained his hand injury. Defendants also assert Plaintiff's description of nurse Jane

Doe #1 as a "heavy set blond woman" is not met by Dowty[1]. Defendants rely on Dowty's deposition transcript, wherein she indicated she would not describe herself as a heavy, blonde woman, and Defendants also provided screenshots of Dowty's social medical profile and a photograph. Defendants also point to Plaintiff's previous identification of Jane Doe #1, wherein Plaintiff identified this individual as Kimberly Garrard. Defendants contend Garrard more accurately fits Plaintiff's description of the nurse he encountered on April 22, 2016. Finally, Defendants assert Dowty testified that her typical job duties in April 2016 would have put her in the cellhouse conducting nurse sick call, not in the healthcare unit/infirmary (Doc. 145-11 at 18).

While the Court is mindful of the discrepancies in Plaintiff's complaints and deposition related to his injury and circumstances related to the same, Defendants' evidence is only sufficient to create a material issue of fact concerning the identity of the nurse who examined Plaintiff on April 22, 2016. Plaintiff's deposition testimony is clear that the nurse he saw on April 22, 2016 was Claudia Dowty. Defendants have not provided sufficient documentary evidence to allow the Court to make a finding this testimony is "irrefutably contradicted." *Steward v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986). Because there is a genuine dispute of material fact concerning the accuracy of Plaintiff's identification of Claudia Dowty as the nurse who examined him on April 22, 2016, the Court cannot grant Defendant Dowty summary judgment on this basis.

Defendant Dowty also asserts the fact that there was not a medical record evidencing the April 22, 2016 examination is not dispositive of deliberate indifference, and that the nursing care

---

[1] By way of background, Plaintiff's original complaint identified Jane Doe Nurses 1-3, and Plaintiff was allowed to proceed on a claim of deliberate indifference against them (Doc. 7). In his original complaint, Plaintiff identified Jane Doe #1 as the nurse he saw on April 22, 2016, and described her as a "heavy blond woman" (Doc. 1 at 9). Plaintiff, through assigned counsel, sought leave to amend his complaint on April 5, 2019, asking to name Kimberly Garrard as Jane Doe #1 (Doc. 36). On April 15, 2019, Plaintiff sought leave to amend his motion for leave to file a first amended complaint, asking to name Claudia Dowty as Jane Doe #1 (Doc. 37). The Court granted Plaintiff leave to amend and Claudia Dowty was identified and substituted for Jane Doe #1.

provided on this date did not amount to deliberate indifference.  Plaintiff agrees this issue is not dispositive, but asserts it is evidence of Defendants' failure to adhere to the ordinary standard of care for medical professionals and institutional policies.  The Court does not find the missing medical record to be evidence of, or instructive to, a finding of deliberate indifference against Dowty.  The mere fact a record was not created does not bear on the care Plaintiff received (or, as he alleges, did not receive).  While it clearly limits the evidence that may be offered by Defendants to demonstrate the care rendered, the Court does not find it to be evidence of deliberate indifference.

The evidence concerning Plaintiff's examination by Nurse Dowty on April 22, 2016 establishes that Plaintiff presented with an injury to his hand that caused it to be red and swollen. Nurse Dowty examined Plaintiff's hand and advised Plaintiff it was a bruise.  Plaintiff testified that Dowty did not render any further treatment, and, more specifically, did not provide him any pain medication.  The Court notes that Plaintiff's amended complaint alleged that Nurse Dowty also provided Plaintiff with a pill packet containing 15 Ibuprofen.  Although the Court recognizes this inconsistent statement, Defendants ask the Court, in effect, to make a credibility determination on this point.  The Court refuses to do so.  *See Ramos v. Drews*, Case No. 14-cv-2556, 2018 WL 5046087, at *10 (N.D. Ill. Oct. 16, 2018) ("This court must decline defendants' invitation to weigh plaintiffs' credibility, for elementary summary judgment principles prevent the court from making credibility determinations, such as weighing the effect of a witness' prior, allegedly inconsistent statements on the witness' testimony.") (citations omitted).

Notwithstanding the Court's refusal to consider Plaintiff's prior inconsistent statement, the Court finds that even when considering the evidence in Plaintiff's favor, Nurse Dowty's actions did not amount to deliberate indifference.  It is undisputed that Dowty examined and manipulated

Plaintiff's hand. Based on the evidence in the record, Dowty used her experience and judgment and determined Plaintiff had sustained a bruise. Plaintiff has not presented evidence that he was in significant pain or that there was an obvious deformity of his hand at this time that such a determination by Dowty was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Indeed, although Plaintiff complains he did not have a translator present, he has not set forth any evidence concerning how this affected his interaction with Dowty on April 22, 2016. Insofar as Plaintiff presents the testimony of Terry Fillman, one of the experts in this matter who testified that when a patient shows redness or inflammation on a finger it should be treated with ice and elevated, and that the patient should receive pain medication and be referred to a subsequent provider for further evaluation (Doc. 146-9 at 13), the Court finds that Dowty's failure to adhere to this protocol on the one occasion she examined Plaintiff does not amount to deliberate indifference. Dowty undisputedly examined Plaintiff's hand, and her failure to refer Plaintiff for further treatment amounts, at most, to negligence. *See Ammons v. Lemke*, 426 F.Supp.2d 866, 871-72 (W.D. Wis. Mar. 31, 2006) (finding the plaintiff's allegations that the physician defendant failed to x-ray his wrist, give him a brace, or prescribe him pain medication after the plaintiff presented with a wrist injury did not state a claim for deliberate indifference, while finding the plaintiff's allegation that the defendant physician refused to examine the plaintiff's wrist stated a claim for deliberate indifference). Plaintiff asserts that continued work with an untreated fracture such as his may cause more pain and discomfort, or could further exacerbate an injury (*see* Doc. 146-6 at 19). However, Plaintiff failed to present any evidence that any delay caused by Dowty's failure to render a particular treatment caused *him* to suffer prolonged pain or exacerbate *his* injury. Such evidence is required to demonstrate deliberate indifference. *See Petties v. Carter*, 836 F.3d

722, 730 (7th Cir. 2016). Defendant Dowty is entitled to summary judgment on Plaintiff's claim against her.

### *Jeanie Stephens*

Plaintiff saw Defendant Stephens for his hand injury on one occasion on May 21, 2016. Stephens observed no swelling or bruising, and found Plaintiff had full range of motion in his hand. Stephens provided Plaintiff with pain medication and noted that Plaintiff rated his pain as a 2-3 out of a scale of 1-10. Stephens advised Plaintiff to return to see a provider if his condition worsened or interfered with daily functioning. Plaintiff makes no argument that he was not able to accurately describe his pain level or was otherwise unable to represent his hand condition to Stephens due to any language barrier.

Similar to the Court's finding with regard to Defendant Dowty, the Court finds that no reasonable jury could find Stephens' actions on this one occasion amounted to deliberate indifference. There is no dispute that Stephens examined Plaintiff's right hand and, in response to Plaintiff's complaints concerning his pain, provided pain medication. Stephens found no swelling, bruising, or obvious discomfort of Plaintiff's right hand. While Plaintiff may have wanted Stephens to take different treatment actions, it is well established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). Based on the evidence in the record, there is no basis for a jury to find Stephens' actions were "blatantly inappropriate." Rather, it appears Stephens used her judgment and experience in evaluating and treating Plaintiff. For these reasons, Defendant Stephens is entitled to summary judgment on Plaintiff's claim against her.

*Evelyn Blanchard*

With regard to Defendant Blanchard, a physician's assistant whom Plaintiff first saw for his hand injury on July 26, 2016, there is again no evidence by which a reasonable jury could find she acted with deliberate indifference. Indeed, upon first evaluating Plaintiff's hand injury, Blanchard provided Plaintiff with pain medication and ordered an x-ray. The x-ray was completed within two days and, on the same day the x-ray was completed, Blanchard recommended a splint/sling, issued a low bunk permit, and referred Plaintiff to collegial review for an orthopedic consultation. The orthopedic consultation was approved on August 2, 2016, and Plaintiff was seen by an outside orthopedist on August 10, 2016. No further treatment was recommended by the orthopedist; however, Blanchard provided Plaintiff with additional pain medication.

Defendant Blanchard asserts she provided timely and thorough medical treatment and that Plaintiff's allegations draw a fine line with a frivolous claim. The Court agrees. It is not at all clear what Plaintiff contends are the deficiencies in Blanchard's treatment of his injury. Indeed, within approximately two weeks of Blanchard's first examination of Plaintiff's hand injury he was seen by an outside orthopedic specialist who did not recommend any further treatment. There is clearly no evidence that Blanchard's actions delayed any treatment or prolonged any pain. There is also no evidence that the course of treatment she engaged in was "blatantly inappropriate."

Defendant Blanchard is entitled to summary judgment on Plaintiff's claim against her.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Evelyn Blanchard, Claudia Dowty, and Jeanie Stephens (Doc. 144) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Evelyn Blanchard, Claudia Dowty, and

Jeanie Stephens and against Plaintiff.

As no claims remain pending, any requests for injunctive relief are moot.   Rob Jeffreys is therefore **DISMISSED**.

Also, in light of this Order, the Motion for Leave to File Amended Affirmative Defenses by Defendants Dowty and Stephens (Doc. 143) is **MOOT**.

**IT IS SO ORDERED.**

**DATED: February 13, 2023**

*s/  Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**